UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY GOFF, | : | Case No. 1:12-cv-735 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 25-39) (ALJ's decision)).

**I.**

On March 19, 2008, Plaintiff applied for DIB and SSI, asserting that she was disabled and could no longer work beginning December 31, 2006, because of cervical disc disease, arthritis in the back and neck, deteriorating and bulging discs in the neck, and anxiety. (Tr. 146-52, 170). Plaintiff's applications were denied initially and upon

reconsideration. (Tr. 95-101, 104-09). Plaintiff timely requested a hearing before an ALJ, and testified at a hearing held on August 26, 2010. (Tr. 45-78, 110-11). By decision dated October 6, 2010, the ALJ denied Plaintiff's claim for benefits. (Tr. 25-39). The ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] to perform medium work[2], subject to additional limitations, that allowed her to perform a significant number of jobs in the national economy. (Tr. 31-32, 37). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff then commenced this action in federal court for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff is a high school graduate and was 45 years old at the time of the hearing. (Tr. 50, 53). Plaintiff lives in an apartment with her boyfriend. (Tr. 49-50). Plaintiff is a recovering alcoholic who has not consumed alcohol for a number of years prior to the hearing. (Tr. 52). Her past relevant work was as an office cleaner and a cashier. (Tr. 53). Plaintiff alleges that she stopped working at her long-term job as an office cleaner by her disability onset date of December 31, 2006, because of the pain and arthritis in her neck and back. (Tr. 54-55). Additionally, Plaintiff alleges that although she attempted to work after the disability onset date, she was unable to work at a level of gainful activity. (Tr. 53).

---

[1] A residual functional capacity is the most you can still do despite your limitations. It is assessed based on the relevant evidence in your case record. 20 C.F.R. § 404.1545.

[2] Work classifications are defined for Social Security purposes based on the amount of physical exertion involved. Medium work involves lifting no more than 50 pounds at a time and frequently lifting or carrying items no more than 25 pounds. It also involves a certain amount of walking or standing. 20 C.F.R. § 404.1567(c), 416.967(c).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has not engaged in substantial gainful activity since December 31, 2006, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the spine; depression; anxiety; history of alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following additional limitations: only simple repetitive tasks; no frequent interruptions or changes; can interact on a superficial level with coworkers and supervisors; no contact with the general public; no tasks with demands for fast pace or high production.

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 27-38).

3

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 39).

On appeal, Plaintiff argues that: (1) the ALJ erred in focusing on the opinion of a non-treating physician instead of the opinions of Plaintiff's treating physicians in formulating Plaintiff's RFC; (2) the ALJ failed to properly assess Plaintiff's credibility; (3) the ALJ erred in assessing the disabling effects of Plaintiff's pain; and (4) the ALJ failed to consider all of Plaintiff's symptoms in posing hypotheticals to the Vocational Expert ("VE"). The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

4

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

**1. Plaintiff's Testimony**

Plaintiff testified that she experiences pain in her back, neck, and hips, and that she suffers from both depression and anxiety. (Tr. 58-59). Plaintiff also testified that she is unable to sleep for sustained periods during the night because of her pain. (Tr. 68). During the course of a typical day, she spends a lot of time in bed using a heating pad. (Tr. 66). She can do a load of laundry, but is limited to one load a day. (Tr. 74). Plaintiff is limited to cleaning one room in her apartment per day "because if I do too much it starts putting my back in chronic pain or my legs start going numb on me." (Tr. 66). Her boyfriend does the grocery shopping because she is unable to spend that much

time on her feet. (Tr. 67, 74). Plaintiff testified that she can help her boyfriend unpack the groceries, but she is limited to assisting with "pudding, bread, meats, small canned goods like soup and stuff like that." (Tr. 74).

Plaintiff testified that the pain in her thoracic and lumber regions contributes significantly to her inability to work. (Tr. 71). She described her pain as severe and as a daily issue; her pain increases with physical activity. (Tr. 78). Specifically, Plaintiff testified that her ability to stand and sit is limited to 20-30 minutes at a time because she experiences shooting pain in her legs, or because her legs start to go numb. (Tr. 60). Plaintiff testified that her legs and feet become numb after approximately 15 minutes of physical activity, or after lying in bed for an extended period of time. (Tr. 75-76). She can sit for 1-2 hours and stand for 2-3 hours during an 8-hour workday. (Tr. 72). The heaviest object that she can lift and carry from one place to another is "maybe one or two liters in a bag."[3] (Tr. 73).

Plaintiff attended eight physical therapy sessions, but decided to stop attending the sessions because she felt they were not helping her. (Tr. 61). Her pain management physician, Dr. Beresh, agreed with her.[4] (*Id.*) Plaintiff testified that the relief she

---

[3] Toward the end of the hearing, the VE testified that Plaintiff's testimony was inconsistent with her previous statements on her application materials: "Previously in the application material she indicated that she had to lift . . . weight that would push it up to medium level but in her testimony today she backed off that weight. And what she testified to today would have been performed at the light level physical demand." (Tr. 85).

[4] The ALJ highlighted that Plaintiff's testimony about her physical therapy sessions conflicted with Dr. Beresh's paperwork, which indicated that Plaintiff was discharged after failing to attend three appointments. (Tr. 60, 455).

experienced from injections and shots designed to alleviate her pain only lasted from a minimum of 7-10 hours, to a maximum of 27.5 hours. (Tr. 61-62).

**2. Medical Evidence of Record**

Physical Impairments

Plaintiff testified that she experiences pain in her back, neck, and hips. (Tr. 58-59). In April 2007, Plaintiff was admitted to the emergency department complaining of neck pain. (Tr. 304). The physical examination revealed mild tenderness posteriorly with some paraspinous muscle spasm, although Plaintiff was neurologically intact. (Tr. 304). In March 2008, Plaintiff was admitted to the emergency department complaining of back pain. (Tr. 294). The lumbar spine physical examination showed that Plaintiff had full range of motion in all extremities, no bony or significant soft tissue tenderness, and no significant muscle spasm. (*Id.*)

In September 2008, Plaintiff underwent an X-ray of her spine and hips which indicated mild left hip spurring, mild scoliosis in the cervical spine, scoliosis with mild degenerative change in the thoracic spine, and scoliosis with degenerative change in the lumbar spine. (Tr. 288-89). The degenerative change in Plaintiff's cervical spine was most pronounced at the C5-6 and 6-7 disc spaces, though it was unchanged since Plaintiff's prior examination in March 2008. (Tr. 289). In May 2010, an MRI of Plaintiff's spine and hips revealed multilevel degenerative changes of the lumbar spine with no significant neural compromise other than abutment of the left L5 nerve root within the neural foramina. (Tr. 474). The MRI of the thoracic spine showed mild multilevel degenerative changes most notable at the T6-T7 and T7-T8 levels with mild

7

deformity of the cord and no definite underlying signal change. (Tr. 477). There was no significant degenerative change in either hip joint. (Tr. 478).

Dr. Patterson began acting as Plaintiff's treating physician in November 2006. (Doc. 8 at 4). Dr. Patterson's 2006, 2007, and August 2009 physical examinations of Plaintiff showed no significant medical issues relating to Plaintiff's hips, neck, or back. (Tr. 349, 351, 355, 358, 393, 450). His 2008 and April 2009 physical examinations showed decreased flexion and extension right and left lateral bending and torsion of the neck and low back. (Tr. 334, 337, 342, 385). In her September 2008 examination, Plaintiff had decreased flexion/extension internal/external rotation and abduction and adduction of the left hip with an antalgic gait. (Tr. 332). Dr. Patterson recommended Plaintiff for disability status multiple times. (Tr. 259, 380, 490).

Dr. Owens replaced Dr. Patterson as Plaintiff's treating physician.[5] (Tr. 63). In September 2010, Dr. Owens completed a functional capacity questionnaire for Plaintiff. (Tr. 492-94). The questionnaire described Plaintiff as able to sit for 3 hours, stand for 3 hours, and walk for 2 hours during an 8-hour workday. (Tr. 492). It reported that Plaintiff can occasionally lift and carry up to 10 pounds, though she cannot complete movements such as bending, squatting, crawling, or crouching. (Tr. 492-93). Dr. Owens also noted that Plaintiff can only use her hands for simple repetitive actions, but not for repetitive pushing and pulling or manipulation. (Tr. 492).

---

[5] There is some disagreement about when Dr. Owens became Plaintiff's treating physician. Plaintiff alleges that Dr. Owens began treating Plaintiff around November 2008. (Doc. 8 at 4). The ALJ's decision, and Plaintiff's medical records, reflect that Dr. Owens first treated Plaintiff in October 2009. (Tr. 34, 449).

8

Dr. Manos and Dr. Goldsmith, Ph.D., evaluated Plaintiff's physical condition for the Bureau of Disability Determination ("BDD") in 2008. Dr. Goldsmith noted that Plaintiff retained the capacity for simple repetitive tasks in an environment that does not contain frequent interruptions or changes. (Tr. 270). Dr. Manos's physical RFC assessment stated that the evidence of record indicated no significant physical limitation, and Plaintiff could perform medium level work. (Tr. 372, 375).

Plaintiff's physical therapist noted that by the end of Plaintiff's physical therapy sessions in 2010, her pain levels were reduced from a 6-7 out of 10 to a 2 out of 10. (Tr. 455). After two months of treatment, Dr. Beresh (Plaintiff's pain management physician) noted normal extension and flexion in Plaintiff's cervical spine, normal rotation in Plaintiff's hips, and a 10-degree decrease in extension in Plaintiff's lumbar spine with tenderness over the spinous process from L1-4. (Tr. 482). Plaintiff also reported hip and neck pain but no back pain. (*Id.*)

Psychological Impairments

Plaintiff testified that she suffers from both anxiety and depression. (Tr. 58-59). Dr. Patterson and Dr. Owens provided medication to Plaintiff for her psychological impairments. (Tr. 349, 351, 355, 450). Plaintiff began counseling with psychologist Conradi in April 2010 with the goal of dealing "with everyday life without being upset." (Tr. 468). In 2008, Dr. Farrell, Ph.D., examined Plaintiff for the BDD. (Tr. 261-66). Also in 2008, Dr. Goldsmith looked at the evidence of the record to evaluate Plaintiff for the BDD. (Tr. 268-85).

Dr. Farrell's evaluation notes from June 13, 2008 indicate that Plaintiff stated "I am anxious. I hate to be around people anymore." (Tr. 261). Dr. Farrell diagnosed Plaintiff with Depressive Disorder NOS, Generalized Anxiety Disorder, alcohol abuse/dependency with fully sustained remission, and a GAF of 60.[6] (Tr. 265-66). Dr. Farrell opined that Plaintiff would not be impaired in following simple one and two-step job instructions. (Tr. 266). Dr. Farrell also opined that Plaintiff would be mildly to moderately impaired in relating to others including coworkers, supervisors, and the general public. (*Id.*) Finally, Dr. Farrell opined that Plaintiff would be moderately impaired in attending, concentrating, and persevering on selected work tasks; and in tolerating the normal stress associated with routine work. (*Id.*)

On July 3, 2008, Dr. Goldsmith completed a mental RFC assessment based on the record containing Plaintiff's medical history. (Tr. 268-71). He provided his opinion that Plaintiff suffered from Depressive Disorder NOS, Generalized Anxiety Disorder, and alcohol abuse in fully sustained remission. (Tr. 275, 277, 280). Additionally, Dr. Goldsmith opined that Plaintiff's diagnoses mildly limited her activities of daily living, and moderately limited her abilities to maintain social functioning and to maintain concentration, persistence, or pace. (Tr. 282). Dr. Goldsmith found that Plaintiff did not suffer from episodes of decompensation. (*Id.*)

### B.

---

[6] The Global Assessment of Functioning ("GAF") is a numeric scale (0-100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults. A score of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

First, Plaintiff claims that the ALJ erred in focusing on the opinion of Dr. Manos instead of the opinions of her treating physicians in formulating her RFC. The ALJ gave "great weight" to Dr. Manos's opinion that Plaintiff is able to work at a physical exertion level of medium. (Tr. 34). In her December 2008 opinion, Dr. Manos cited Dr. Patterson's September 2008 observations that Plaintiff had decreased flexion and extension in the left hip. (Tr. 271-72). She also referenced the X-ray results that indicated Plaintiff's degenerative changes at C5-6 and 6-7 of the cervical spine. (Tr. 271). Dr. Manos considered the totality of Plaintiff's medical record in formulating her opinion for Plaintiff's RFC.

Plaintiff claims that the 2008 RFC is inaccurate, outdated, and does not reflect any consideration of her May 2010 MRI results. (Doc. 8 at 17). Dr. Manos's RFC assessment was issued in 2008; of course, it could not have included any assessment of a test taken two years later. However, even if Dr. Manos were to have considered the 2010 MRI, there is no basis to conclude that Dr. Manos would have changed her ultimate analysis, as the results of the 2010 MRI do not differ significantly from the 2008 X-rays that Dr. Manos did consider.[7] (Tr. 288-89, 474-78).

While it is true that the Social Security regulations and the "treating physician rule" recommend that the ALJ give greater weight to treating physician opinions than to

---

[7] There is some confusion regarding Plaintiff's date of disability onset. The Commissioner alleges that Plaintiff changed the date of her disability onset from December 2006 to May 2010. (Doc. 13 at 3-4). The Commissioner then states that Plaintiff weakens her argument by "suggesting there is no substantial evidence of disability prior to May 2010." (Doc. 13 at 6). However, the Commissioner misconstrues Plaintiff's argument, which states "[b]y at least May 2010, the record contains substantial evidence of plaintiff's disability without any substantial evidence supporting the ALJ's decision." (Doc. 8 at 24). Thus, Plaintiff did not change the date of the onset of her disability.

non-treating physician opinions, the ALJ is not required to do so if a treating physician opinion conflicts with other substantial evidence, or if there is a lack of medical and laboratory tests to confirm the treating physician opinion. 20 C.F.R. § 404.1527(c); *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Additionally, even if there is substantial evidence that supports the Commissioner's decision, the ALJ must provide "good reasons" for failing to follow the opinion of the treating physician. 20 C.F.R. § 404.1527(d)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Here, the ALJ does not specify exactly how much weight she gave to the opinion of Dr. Patterson, Plaintiff's first treating physician. The ALJ noted that Dr. Patterson's treatment records do not support his conclusion that Plaintiff is disabled. (Tr. 33). Moreover, the ALJ explained that Dr. Patterson based a large portion of his disability determination on Plaintiff's own subjective reports of her symptoms instead of on objective clinical tests or laboratory findings. (*Id.*) In assessing Plaintiff's statements to determine disability, they must be considered in relation to the objective medical evidence. 20 C.F.R. § 404.1529(c)(4). An ALJ need not accept unsupported medical opinions or a Plaintiff's subjective complaints. *McDaniel* v. *Astrue*, No. 1:10CV699, 2011 U.S. Dist. LEXIS 136274, at *4 (S.D. Ohio Nov. 28, 2011). By explaining exactly why she did not accord Dr. Patterson's opinion great weight, the ALJ fulfilled both the treating physician rule and the good reasons rule in regards to Dr. Patterson.

The ALJ also complied with the two rules with respect to Dr. Owens's opinion in affording her opinion "little weight." (Tr. 34). Dr. Owens opined in September 2010 that

12

Plaintiff could only lift up to 10 pounds; could not bend, crawl, squat, or stoop; and could not use her hands for fine manipulations, pushing or pulling, or repetitive grasping. (Tr. 492-93). Dr. Owens's treatment notes indicated that Plaintiff had some musculoskeletal abnormalities, such as tender spine and antalgic gait, and left hip pain on interior rotation. (Tr. 434, 439, 442). The ALJ explained that she gave Dr. Owens's opinion little weight because her treatment notes do not support such a restrictive RFC, and because Dr. Owens had only been treating Plaintiff for approximately one year or less. *See* 20 C.F.R. § 404.1527(c)(2)(i); (Tr. 34). Furthermore, the ALJ stated that Dr. Owens's assessment was inconsistent with the record's objective medical evidence as a whole. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); (Tr. 34).

Finally, the ALJ did not completely discount the treating physicians' opinions in determining Plaintiff's RFC. She considered the record as a whole when she added numerous limitations to Plaintiff's RFC. Although Dr. Manos recommended an RFC of medium, the ALJ added conditions to her Findings to ensure an appropriate level of physical exertion for Plaintiff, such as limiting Plaintiff to superficial interactions with others in the workplace and eliminating tasks that require fast pace or high production. (Tr. 32).

Thus, Plaintiff's argument fails when analyzing the ALJ's decision against the requirements of the Social Security regulations. *See* 20 C.F.R. §§ 404.1527; 404.1529 (c). The ALJ did not err in giving great weight to Dr. Manos's opinion when determining Plaintiff's RFC. Treating physicians opinions' are not binding, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004), and the ALJ provided a coherent framework

13

to support her decision. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The ALJ clearly explained that Plaintiff's treating physicians' opinions received less weight because they conflicted with substantial evidence of the record and because their treatment notes were inconsistent with their limitation and disability findings.

## C.

Next, Plaintiff claims that the ALJ failed to properly assess her credibility. Specifically, Plaintiff alleges that the ALJ improperly referenced Dr. Manos's opinion and the ALJ's own RFC determination to deem Plaintiff's statements incredible. (Doc. 8 at 19). Plaintiff cites *Meece v. Barnhart* for the proposition that the ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is *supported by the medical evidence*." No. 05-6502, 2006 U.S. App. LEXIS 20476, at *26-27 (6th Cir. Aug. 8, 2006) (emphasis added). Yet, as mentioned earlier, the ALJ determined that both Dr. Patterson and Dr. Owens's opinions about Plaintiff's disability status were not supported either by their own treatment records or by substantial objective medical evidence. *See supra* Section II. B.

Furthermore, when reviewing the ALJ's decision, this Court must accord great deference to the ALJ's credibility determinations, as the ALJ had the opportunity to observe the claimant's demeanor during the hearing. *Jones* v. *Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Plaintiff alleges that she suffers from constant pain both during the day and during the night; the pain is so severe that it precludes her from sleeping. (Tr. 78). However, to the extent that Plaintiff's pain is disabling, there is not sufficient evidence. *Jones*, 336 F.3d at 476 (subjective complaints can support a claim

14

for disability, if there is also objective medical evidence). If the claimed pain is not substantiated by the medical record, the ALJ must make a credibility determination based on the entire case record. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, who may properly find the Plaintiff's testimony lacking in credibility when her reports contradict medical evidence. *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Referencing the objective medical record, such as the results from Plaintiff's September 2008 X-ray, Plaintiff's May 2010 MRI, Plaintiff's improvement in her physical therapy sessions, and Plaintiff's treatment records with Dr. Patterson, the ALJ found that Plaintiff's allegations of disability were unsupported. (Tr. 33, 288-89, 332, 334, 337, 342, 349, 351, 355, 358, 393, 450, 455, 474, 477-78).

In addition to the objective medical evidence, the ALJ noted that Plaintiff leaves her house for weekly 2.5 hour-long church services, and can accomplish light household chores. (Tr. 32-33). Plaintiff herself even testified that she visits her children "as often as possible," around "twice a week." (Tr. 51). For further indication that Plaintiff's symptoms were not as severe as she alleged, the ALJ highlighted Plaintiff's decision to stop attending physical therapy sessions before the physical therapist discharged her.[8] (Tr. 28, 455). The ALJ also mentioned Plaintiff's conservative treatment, and the absence of imaging evidence to validate the severity and frequency of Plaintiff's reports of pain. (Tr. 36). *See* SSR 96-7p ("[T]he individual's statements may be less credible if

---

[8] Plaintiff contests this point, alleging that she voluntarily, and with the agreement of her pain management physician, stopped attending her physical therapy sessions. (Tr. 60).

15

the level or frequency of treatment is inconsistent with the levels of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").

In making her credibility assessment, the ALJ's references to Plaintiff's objective medical record and to the record as a whole constitute substantial evidence for her decision. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Given the ALJ's references to the record and the deference this Court affords to the ALJ's credibility determination, the ALJ's credibility determination was proper.

### D.

Plaintiff also claims that the ALJ erred in assessing the disabling effects of her pain. Because the measurement of one's pain is subjective, *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991), the regulations set forth factors that the ALJ should consider in assessing symptoms such as pain. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors;[9] the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi); 416.929(c)(3)(i)-(vi). The ALJ noted that Plaintiff had sometimes engaged more extensively in daily activities than what she had claimed. (Tr.

---

[9] There is some question about Plaintiff's possible drug-seeking behavior. The ALJ emphasized that in assessing Plaintiff's impairments, she merely noted Plaintiff's "inconsistent statements" about drug use. (Tr. 30). *See* 20 C.F.R. § 404.1535. At the hearing, Plaintiff denied knowledge of abnormal results from a 2008 toxicology screening. (Tr. 70, 366). However, Plaintiff requested extra Vicodin and early refills of her Vicodin prescription in March 2008. (Tr. 345). Dr. Patterson noted, "if she is out, she is taking 10 per day . . . that is deadly, no more than 3 a day!" (Tr. 345).

16

33). For example, Plaintiff continued to work periodically in positions such as an office cleaner after her alleged disability onset date. (Tr. 33, 53). Additionally, as previously mentioned, Plaintiff continued to attend church and visit her children each week. *See supra* Section II. C.

Plaintiff claims that her pain itself is disabling, and cites Sixth Circuit precedent for a two-step analysis to demonstrate the disabling nature of her pain. (Doc. 8 at 20). The second step of this analysis states that the severity of the alleged disabling pain must be validated by objective medical evidence, or the Plaintiff's condition must be so severe that it can reasonably be expected to produce disabling pain. (Doc. 8 at 20, citing *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994)). The ALJ emphasized at multiple points throughout her decision that objective medical evidence did not confirm the alleged severity of Plaintiff's pain. *See supra* Sections II. B and II. C.

Furthermore, the ALJ's credibility determination also contributed to her assessment of Plaintiff's subjective complaints of her pain. The credibility determination, which is accorded great deference, factors into the ALJ's evaluation of Plaintiff's reports of pain. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 394 (6th Cir. 2004). Plaintiff's claim that the ALJ failed to correctly assess the disabling effects of her pain is not well-founded or supported by the record.

### E.

Finally, Plaintiff claims that the ALJ failed to consider all of her symptoms in posing hypotheticals to the VE. The Sixth Circuit has held that all parts of a hypothetical posed by the ALJ "must accurately describe the claimant." *Felinsky v. Bowen*, 35 F.3d

17

1027, 1035-36 (6th Cir. 1994). On the other hand, hypotheticals are not required to include information that the ALJ has deemed incredible, information from a physician's opinion that has been discounted, or Plaintiff's subjective complaints of pain that are not confirmed by objective medical evidence. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1236 (6th Cir. 1993); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.3d 228, 231 (6th Cir. 1990). In this situation, the ALJ posed a series of six different hypotheticals to the VE to determine if Plaintiff could continue her past work as a housekeeper and a cashier. Plaintiff alleges that "these hypothetical questions were improperly based only upon physical limitations and restrictions derived from" Dr. Manos's opinion. (Doc. 8 at 23). However, Plaintiff failed to note that the ALJ specifically mentioned other medical information from the record, such as Dr. Goldsmith's opinion and Dr. Patterson's treatment records, in formulating her hypotheticals. (Tr. 85, 87).

Moreover, the ALJ was not required to base her hypotheticals on the testimony of Plaintiff, as Plaintiff alleges. (Doc. 8 at 23). The ALJ deemed some of Plaintiff's statements about her pain and daily activities to be inconsistent with previous reports of her daily activities and with the objective medical record as a whole. *See Blacha*, 927 F.3d at 231; (Tr. 36). The VE himself remarked that it was difficult to formulate hypotheticals in this situation because Plaintiff's responses about the physical exertion level of her past work differed significantly at the hearing compared to her application materials. (Tr. 85).

18

Plaintiff also claims that the ALJ's hypotheticals should have included the limitations on her ability to stand and walk as outlined in both Dr. Patterson's records and in Dr. Owens's physical functional capacity assessment. (Doc. 8 at 23). The ALJ was not required to pose a hypothetical based on Dr. Patterson's disability findings, as she concluded that his treatment records did not support such a conclusion. *See Casey* 987 F.2d at 1236; (Tr. 33). Yet, Plaintiff failed to acknowledge that the ALJ actually did pose a hypothetical to the VE based on Dr. Patterson's records in Exhibit 12F. (Tr. 87). The VE responded to the hypothetical by stating that that he was unable to answer it because Dr. Patterson's records about Plaintiff's functional abilities were inconclusive. (Tr. 87). Additionally, Plaintiff's assertion failed to acknowledge that it was impossible for the ALJ to formulate a hypothetical based on Dr. Owens's physical functional capacity assessment, as Dr. Owens did not conduct that assessment until September 2010, almost a full month after the hearing. (Tr. 491-94).

In sum, the ALJ's hypotheticals posed to the VE were not improper or incomplete; they accurately represented the abilities of the Plaintiff. The ALJ did not err in finding that Plaintiff can perform her past relevant work as a housekeeper.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

19

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Kimberly Goff was not entitled to disability insurance benefits, and supplemental security income, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date:  July 5, 2013                                              *s/ Timothy S. Black*
       LH                                                                   Timothy S. Black
                                                                United States District Judge